# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| BETTER MOUSE COMPANY, LLC, | CIVIL ACTION NO. 2:14-cv-198 |
| Plaintiff, | **(Consolidated Lead Case)** |
| v. | **JURY TRIAL DEMANDED** |
| STEELSERIES APS, ET AL., | |
| Defendants. | |

## BETTER MOUSE COMPANY'S OPPOSITION TO THE MOTION TO STAY PENDING *INTER PARTES* REVIEW

I.     INTRODUCTION

The motion for a stay pending *inter partes* review is undeniably premature.  As Judge Bryson recently opined, "[t]he most important—indeed, the dispositive—factor bearing on the Court's exercise of its discretion" on whether to grant such a stay "is that the PTAB [(Patent Trial and Appeal Board)] has not yet acted on [the] petition for *inter partes* review."[1]  Because the PTAB has not ruled on the IPR petition here, the stay should be denied on that ground alone.

But even if this factor were not dispositive, the motion also fails the three-factor test that district courts typically use to determine whether to grant a stay pending completion of an IPR.  These factors are: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether discovery is complete and a trial date has been set, and (3) whether the stay will simplify issues in question in the litigation.  Not one of these factors favors a stay.

This boilerplate motion could be filed in any case with a patent subject to an IPR petition.  Accepting its premises requires concluding that a stay is mandated any time a petition is filed.  Yet to do so would cause this Court to depart from its consistent practice of keeping its cases moving forward.[2]  This practice is especially prudent because an IPR is no patent-killing silver bullet.  Indeed, in the majority of cases, the PTAB now declines to review one or more of the challenged claims.  This stay should be denied.

---

[1] *Freeny v. Apple Inc.*, No. 2:13-cv-361, Dkt. 109, at 1 (E.D. Tex. July 22, 2014) (denying stay).

[2] *See* Ex. 1 [Goodwin Proctor Sept. 2014 PTAB Report] at 8 (showing that this Court has granted IPR stays in only 4 out of 26 motions).

1

**II.     A STAY WOULD NOT SIMPLIFY THE ISSUES**

   **A.  The IPR Petition Has Not Been Granted**

As Judge Bryson noted in *Freeny*, the PTAB's inaction on the petition is "the dispositive factor" in denying a stay. "If the petition is denied, the stay would contribute not at all to simplifying the issues before the Court." *Freeny*, slip op. at 4. In fact, PTAB inaction weighs so strongly against a stay that this Court has denied even an ***unopposed*** motion for a stay in that circumstance. *See MPHJ Tech. Invs., LLC v. Research Now, Inc.*, No. 2:13-cv-962, Dkt. 23, at 2–3 (E.D. Tex. June 10, 2014). This opposed motion should likewise be denied.

   **B.  The Petition Will Likely Be Denied as to At Least Some Challenged Claims**

Movants ask the Court to speculate that the PTAB will grant the petition and begin the PTAB trial process, stating that "in fiscal year 2013, 87 percent of petitions for *inter partes* review were granted." Mtn. at 12. But this Court has already rejected as "speculative" attempts "to extrapolate from those initial numbers [showing a high grant rate], expecting that the percentage of granted petitions would remain the same in the future." *Freeny*, Dkt. 109 at 4. In fact, the "statistics show a significant fall-off in the percentage of granted petitions between fiscal year 2013 and fiscal year 2014." *Id.*

And in piling conjecture upon conjecture, movants overlook the reality that the petition will likely be ***denied*** as to one or more of the challenged claims. In a recent quarter, review was denied for one or more of the challenged claims in 58% of petitions, with complete denials on all challenged claims occurring almost one-third of the time. *See* Ex. 2 [Article on PTAB Statistics from April–July 2014] (showing that 26% of petitions were granted to fewer than all challenged claims and 32% of petitions were denied

outright). Should either happen, a stay would make no sense, since this case could continue on claims not subject to PTAB review.

Movants ask the Court to assume not just that their petition will be granted, but also that it will be granted as to all claims and further that all claims will be invalidated after review. This string of speculation contradicts the PTAB's actual practice.

### C. Not All Defendants Have Agreed to Be Subject to the Same Litigation Estoppel as IPR Petitioners

An *inter partes* review may result in cancellation of all claims. But it may also result in a final written decision with claims surviving.[3] The latter outcome simplifies invalidity analysis due to the estoppel provided by statute: a petitioner "may not assert . . . in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." 35 U.S.C. § 315(e)(2). But this estoppel potentially applies to only ASUS and Thermaltake, as petitioner–defendants, not to all infringement defendants[4]—requiring this Court to still analyze invalidity for Steelseries, Mad Catz, ROCCAT, Corsair, and Cooler Master. That outcome would not simplify the issues.

Of course, the chance that the stay would simplify the issues would increase if all defendants stipulated to be bound by IPR estoppel to the same extent as petitioners. But during the meet and confer for this motion, movants indicated that not all defendants had

---

[3] Movants may downplay the possibility of this outcome, but this outcome is no less conjecture than the possibility that the IPR petition results in the complete cancellation of all claims.

[4] Some of the defendants may be privies or real parties-in-interest to non-defendant petitioner Dexin Electronics Co., Ltd. Should this be the case, then 35 U.S.C. § 315(e)(2) would apply estoppel to these defendants as well. Whether any defendants have such a relationship to Dexin will be borne out only after discovery, which has not yet begun.

agreed to be so bound. In fact, the filed motion does not even make it clear whether non-petitioning movant Mad Catz has agreed to this limitation.[5] Nor is it clear whether Steelseries has done so—its Notice of Joinder merely states that it "adopts all arguments set forth and relief requested in the Moving Defendants' Motion." Dkt. 65. But it is clear that Corsair and Cooler Master have not agreed to estoppel; their separate filing refuses to even endorse the logic of the motion, joining only in its requested relief. *See* Dkt. 69 (declining to join or re-urge the positions in this motion, but asking for a stay of the cases against Corsair and Cooler Master). Given the fractures in application of estoppel, no simplification would result.

### III. A STAY WOULD UNDULY PREJUDICE THE PLAINTIFF

"The public policy favoring expeditious resolution of disputes is of particular weight when dealing with wasting assets such as patents." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463–64 (Fed. Cir. 1990). That is why this Court has repeatedly "acknowledge[d] that a plaintiff has 'an interest in the timely enforcement of its patent right.'" *Lennon Image Techs., LLC v. Lumondi Inc.*, No. 2:13-cv-238, Dkt. 24 (E.D. Tex. Jan. 6, 2014) (quoting *Ambato Media, LLC v. Clarion Co., Ltd.*, No. 2:09-cv-242, 2012 WL 194172, at *1 (E.D. Tex. Jan. 23, 2012)).

But this public policy favoring timely resolution of patent cases would be significantly jeopardized by a stay here. The IPR process does not, as movants contend,

---

[5] On one hand, the motion's introduction states that "*[m]ovants* will be estopped from asserting [invalidity]," implying Mad Catz has agreed to estoppel. Mtn. at 3 (emphasis added). On the other hand, the body of its argument references how "estoppel precludes the *petitioner*" and how "defendants must carefully weigh the strength of *their petitions* before risking [] estoppel," implying that Mad Catz has not agreed to estoppel. *Id.* at 6, 7 (emphasis added).

4

end in the next seventeen months. *See* mtn. at 10 (noting that any review must be completed twelve months after a decision, which occurs in the next five months). Rather, due to potential appeals,[6] that process in fact concludes roughly two-and-a-half years later:



Ex. 3 [IPR Presentation from Patent Resources Group] at 38. This timeline dwarfs the likely time-to-trial here.[7] This Court has previously recognized the appellate effect on the length of a proposed stay. *See Lennon Image Techs., LLC v. Lumondi Inc.*, No. 2:13-cv-238, Dkt. 24, at 4 (E.D. Tex. Jan. 6, 2014).

A two-and-a-half-year delay would also raise the specter of evidence loss. "[W]hen a case is stayed, 'witnesses may become unavailable, their memories may fade,

---

[6] It bears noting that the movant–petitioners may initiate an appeal should they lose in the IPR. A stay would provide them every incentive to appeal, no matter their chances of success on appeal.

[7] *See* Ex. 4 [McSmith Blog Post on E.D. Tex. Time-to-trial Trends] ("[T]he trial settings at the last Marshall status conferences in December [2012] were 13-16 months.").

and evidence may be lost while the PTO proceedings take place.'" *Ambato Media, LLC v. Clarion Co., Ltd.*, No. 2:09-cv-242, 2012 WL 194172, at *1 (E.D. Tex. Jan. 23, 2012).

True, the fact that "memories may fade and witnesses may become unavailable," is not, by itself, "sufficient to justify a conclusion of undue prejudice," *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014). But here that danger is exacerbated by the foreign residence of many relevant witnesses, which severely impedes BMC's ability to compel testimony or production if they change employers. For example, many of ASUS and Thermaltake's personnel—and likely relevant witnesses—reside in Taiwan or Mainland China. *See* Ex. 5 [ASUS Contact Us Page] (designating headquarters in Taiwan); Ex. 6 [Thermaltake Contact Us Page] (designating headquarters in Taiwan).

Such is likely also the case for many of the companies who design or make the accused products, which are certain computer mice that allow for on-the-fly alteration of the displacement resolution, commonly known as "DPI." In fact, IPR petitioner Dexin Electronics Co., Ltd. is based out of Taiwan and is believed to have no U.S. presence.[8] Dexin makes products for at least defendants Thermaltake, Steelseries, ASUS, and Mad Catz.[9] Dexin even touts its familiarity with "one of the hottest features on a gaming mouse – DPI fine-tuning technology," Ex. 13 [Dexin 2009 News Release]. So Dexin, as well as other overseas manufacturers, will likely employ relevant witnesses.

---

[8] *See* Ex. 7 [Taiwan Stock Exchange listing for "Dexin Corp."] (showing that "Lu Ho Lung" is Chairman and General Manager); Ex. 8 [IPR Power of Attorney for Dexin Electronic Co., Ltd.] (signed by "Lu Ho Lung," "General Manager"); Ex. 9 [Dexin Contact Us Page] (showing no U.S. offices).

[9] *See* Ex. 10 [Report on Thermaltake Gaming Mouse Driver File 1]; Ex. 11 [Report on Thermaltake Gaming Mouse Driver File 2]; Ex. 12 [Bill of Lading for Shipment Btwn Dexin & Steelseries]; Ex. 13 [Dexin 2009 News Release] (indicating Dexin manufactures for ASUS and Saitek); Ex. 14 [Mad Catz P.R. on its Acquisition of Saitek].

But during a two-and-a-half year stay, these defendant or third party witnesses may leave their employers. Or relationships may sour between the defendants and the third party manufacturers, making it more difficult for defendants to leverage their business relationships to obtain evidence. Should either happen, the extraterritorial residency of these witnesses may make it practically unfeasible to compel them to testify or provide evidence.

Also compounding the likelihood of evidence loss is the discontinued status of several of the accused mice. "The risk of loss as to both witness testimony and other evidence is in fact heightened if the accused product has been . . . discontinued." *Volstar Techs., Inc. v. Superior Commc'ns, Inc.*, No: 2:12-cv-82, Dkt. 39, at 5 (E.D. Tex. Aug. 22, 2013). That is because "when a product is discontinued, experience shows that some of the responsible engineers and related personnel are more likely than otherwise to leave . . . , making it increasingly difficult to secure testimony and evidence from them." *Id.*

Such is the case here. For example, the Kana model named in the complaint against Steelseries is "no longer available," according to the Steelseries website. Ex. 15 [Product Page for Steelseries Kana]. And several models that will soon be named in infringement contentions have also been discontinued. *See, e.g.*, Ex. 16 [Amazon.com Listing for Mad Catz Saitek GM2400 Mouse]. Defendant personnel and third-party manufacturers involved with these discontinued products will only further drift away from defendants during a two-and-a-half year stay. *See Freeny*, slip op. at 3 (finding prejudicial the loss of evidence as to discontinued products, especially where "evidence that may be in the possession of the third party who worked with [defendant] in the development and manufacture of the accused products").

Finally, despite movants' argument to the contrary, mtn. at 10, BMC's non-practicing status does not mean it cannot be prejudiced by a stay. *See BarTex Research, LLC v. FedEx Corp.*, 611 F. Supp.2d 647, 650–52 (E.D. Tex. 2009) (concluding that a non- practicing entity would be unduly prejudiced by a stay pending reexamination).

## IV. THE STATUS OF THIS CASE WEIGHTS AGAINST A STAY

This case was filed nearly seven months ago, and was held up due to delays imposed by service of various consolidated defendants in countries requiring compliance with the Hague Service Convention. But this case will soon move forward. *See* Dkt. 68 [Notice of Readiness for Scheduling Conference]. By the time this motion is decided, a scheduling order will likely have been entered and discovery will be underway. *See Freeny*, slip op. at 4 (assessing this factor based on events occurring after briefing on the stay motion, such as the filing of a scheduling order). The stage of the proceedings weighs against a stay.

## V. CONCLUSION

For the above reasons, the requested stay should be denied.

Dated: October 6, 2014                    Respectfully submitted,

*/s/ Kris Y. Teng*
Larry D. Thompson, Jr. (lead attorney)
Texas Bar No. 24051428
larry@ahtlawfirm.com
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Kris Y. Teng
Texas Bar No. 24079443
kris@ahtlawfirm.com
ANTONELLI, HARRINGTON &
THOMPSON LLP

4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000
(713) 581-3020 fax

Stafford Davis
State Bar No. 24054605
THE STAFFORD DAVIS FIRM, PC
305 S. Broadway, Suite 406
Tyler, Texas 75702
(903) 593-7000
sdavis@stafforddavisfirm.com

*Attorneys for Plaintiff*
*Better Mouse Company, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kris Y. Teng*
Kris Y. Teng