# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| BETTER MOUSE COMPANY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:14-cv-198-RSP |
| | § | |
| STEELSERIES APS, ET AL., | § | |
| | § | |
| Defendants. | § | |

## *DAUBERT* ORDER

Pending before the Court is Defendant SteelSeries' Motion to Exclude the Opinions of Plaintiff's Damages Expert Justin Blok Pursuant to Federal Rule of Evidence 702. (Dkt. No. 228.) SteelSeries raises four arguments in its Motion. First, SteelSeries asserts that Mr. Blok's testimony is not admissible under Federal Circuit precedent because he "makes no meaningful attempt to apportion the royalty base." (Dkt. No. 309 at 4.) Second, SteelSeries claims that Mr. Blok's testimony is not admissible because he relies on licenses covering technologies that are not comparable to those in the Asserted Patent.[1] (Dkt. No. 309 at 10.) Third, SteelSeries contends that Mr. Blok's testimony is not admissible because he did not adjust the royalty rates he derived from the comparable licenses to capture only the portion of the royalties that are attributable to the patents which cover technologies similar to the Asserted Patent. (*See* Dkt. No. 309 at 8.) Finally, SteelSeries states that Mr. Blok's analysis is not admissible because he relied on summaries of the licenses, and not the complete licenses, to determine their comparability to the Asserted Patent. (Dkt. No. 228 at 14.) For the following reasons the Court will not exclude Dr. Hart's testimony under *Daubert*.

---

[1] U.S. Patent No. 7,532,200 (the '200 patent)

## BACKGROUND

Mr. Blok identified a reasonable royalty that SteelSeries would have paid for a license to the '200 patent if SteelSeries and the patentee had entered into licensing negotiations on May 12, 2009, the day the '200 patent issued. (Dkt. No. 228-6 ¶39.) Mr. Blok stated that his reasonable royalty determination began with an analysis of four licenses that Dr. Samuel Russ said covered technologies comparable to the technology disclosed in the '200 patent. (Dkt. No. 288-6 ¶128.) Those licenses are (1) the 1996 Immersion-Logitech license; (2) the 1998 Immersion-Logitech license; (3) the Immersion-Saitek license; and (4) the Cyberhand-Burke license. (Dkt. No. 288-6 ¶¶127–28.)

Mr. Blok determined that SteelSeries and the patentee would have reached an agreement in which the royalty was measured on a per-unit basis. Mr. Blok found that the 1996 Immersion-Logitech license, the 1998 Immersion-Logitech license, and the Cyberhand-Burke license provided comparable royalty rates. (*See* Dkt. No. 228-6 ¶130 ("Based on my analysis of these prices, I was able to determine the per unit value the parties to these agreements considered appropriate for rights to technologies that Dr. Russ considers 'sufficiently technologically comparable' to the teachings of the '200 Patent and provide similar benefits to the end user.").) Mr. Blok found that the Immersion-Saitek license did not provide a comparable per-unit royalty rate because he was unable to identify "the specific models of products licensed." (Dkt. No. 228-6 ¶129.)

## APPLICABLE LAW

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field."); *TQP Dev. LLC v. 1-800-Flowers.com, Inc.*, Case No. 2:11-cv-248-JRG, 2015 WL 6694116, at *4 (E.D. Tex. Nov. 3, 2015) ("Dr. Becker was entitled to rely upon Dr. Jager's technical analysis when constructing his damages model and presenting it to the jury.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire*

*Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## ANALYSIS

SteelSeries challenges the reliability of the methods that Mr. Blok used to calculate a reasonable royalty for the '200 patent. SteelSeries asserts that Mr. Blok should not have relied on the technological analysis of Dr. Russ which SteelSeries contends is not constrained by the disclosures in the '200 patent. SteelSeries further asserts that Mr. Blok should not have calculated the reasonable royalty for the '200 patent by using a per-unit royalty rate based on the 1996 Immersion-Logitech license, the 1998 Immersion-Logitech license, and the Cyberhand-Burke agreement.

As to the first, SteelSeries has not shown that it was unreasonable for Mr. Blok to rely on Dr. Russ with respect to the technological comparability of the '200 patent to other patents. "Rule 703 explicitly allows an expert to rely on information [that] he has been made aware of 'if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Apple*, 757 F.3d at 1321. SteelSeries has not directly challenged the relevance and reliability of Dr. Russ' testimony on the comparability of the '200 patent to patents

4

in the 1996 Immersion-Logitech license, the 1998 Immersion-Logitech license, and the Cyberhand-Burke agreement.

As to the second, Mr. Blok used a testable method show that the numbers from 1996 Immersion-Logitech license, the 1998 Immersion-Logitech license, and the Cyberhand-Burke agreement are applicable. Mr. Blok found that in a negotiation for rights to the '200 patent, SteelSeries would have paid the patentee a royalty rate that was the average of four "data points." (Dkt. No. 228-6 ¶131 ("A royalty rate based on the average of these four data points is conservative.").) Mr. Blok calculated these data points using the products covered by and rates from the 1996 Immersion-Logitech license, the 1998 Immersion-Logitech license, and the Cyberhand-Burke license. (Dkt. No. 228-6 ¶¶87–88, 94, 115).) SteelSeries can challenge this method of determining the royalty rate for the '200 patent on cross-examination. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 569.

SteelSeries raises two final challenges to the admissibility of Mr. Blok's testimony. First, SteelSeries asserts that Mr. Blok did not apportion the royalty base to distinguish the accused functionality from the non-infringing functionalities of the accused products. (Dkt. No. 228 at 5–6.) Second, SteelSeries contends that Mr. Blok's testimony is not admissible because he improperly relied on summaries of the 1996 Immersion-Logitech license, the 1998 Immersion-Logitech license, and the Cyberhand-Burke agreement. (*See* Dkt. No. 228 at 14 ("Mr. Blok's testimony is unreliable for the independent reason that it does not rely on the alleged benchmark licenses themselves, but rather 'summaries' prepared by third parties that are of dubious origin and value.").)

5

As to the first, the Court finds that under Federal Circuit precedent, Mr. Blok does not always need to identify the smallest saleable unit to satisfy apportionment. *See Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 2015-1066, 2015 WL 7783669, slip. op., at *5 (Fed. Cir. Dec. 3, 2015) ("The rule Cisco advances—which would require all damages models to begin with the smallest salable patent practicing unit—is untenable. It conflicts with our prior approvals of a methodology that values the asserted patent based on comparable licenses."). The Court further finds that the specifics of Mr. Blok's method of apportioning the royalty rate of the allegedly comparable licenses can be addressed on cross-examination. *See Daubert*, 509 U.S. at 569.

As to the second, the Court finds that Plaintiff relied on more than summaries of the allegedly comparable licenses. Dr. Russ cites to full copies of the allegedly comparable licenses as the licenses are attached to filings with the Securities and Exchange Commission. (*See, e.g.*, Dkt. 228-6 at 39 n.177.) SteelSeries has not shown that Dr. Russ' reliance on these licenses is unreliable.

## CONCLUSION

Plaintiff has shown that Mr. Blok's testimony is admissible. Defendant SteelSeries' Motion to Exclude the Opinions of Plaintiff's Damages Expert Justin Blok Pursuant to Federal Rule of Evidence 702 (Dkt. No. 228.) is **DENIED**.

**SIGNED this 9th day of January, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE